**Opinion filed January 5, 2012**



# In The

# Eleventh Court of Appeals

_____

## No. 11-10-00032-CV
_____

## JUDY LYNNE BURCHARD, Appellant

## V.

## MARK DAVID BURCHARD ET AL., Appellees

**On Appeal from the County Court**
**Callahan County, Texas**
**Trial Court Cause No. 5699**

## M E M O R A N D U M   O P I N I O N

Judy Lynne Burchard appeals a summary judgment granted in favor of Mark David Burchard, Denise Renee Burchard Sandifer, and Curtis R. Burchard, in his capacity as independent executor of the estate of Joseph David Burchard. Joseph David Burchard, Judy's[1] husband, died in 2005 and left a will naming Curtis Randall Burchard as executor. Curtis filed a petition for declaratory judgment asking the trial court to construe certain language in the will:

> To MARK DAVID BURCHARD, DENISE RENE BURCHARD SANDIFER, and, CURTIS RANDALL BURCHARD, share and share alike, I bequeath my one-third (1/3) undivided ownership of Sections 23, 26, 27, 28, 35,

---

[1]Because most of the litigants in this case share the same last name, they will be referred to in this opinion by their first names.

and 48 in Block 58 and Sections 35, 40, 41, in Block 57 PSL, Reeves County, Texas. All revenues from these properties (excluding any sale of such properties) which have been accrued by JOSEPH DAVID BURCHARD will now accrue to my wife, JUDY LYNN BURCHARD until her death or remarriage which at such time all will revert to my three children or their heirs.

The trial court granted a motion for summary judgment filed by Mark and Denise, holding that the above provision was not ambiguous; granting a fee simple absolute estate in the properties to Mark, Denise, and Curtis; and granting Judy a usufructuary interest in the property. The court further held that Judy was only entitled to receive revenues generated by the properties from sources that generated revenue during Joseph's life for her life. We reverse and remand.

In five issues, Judy attacks the factual support for the trial court's findings and challenges the finding that the language is unambiguous. We will first address the trial court's finding that the language is unambiguous.

*De Novo Review*

Extrinsic evidence is admissible to determine a testator's intent when there is an ambiguity in the language of the will. *In re Estate of Cohorn*, 622 S.W.2d 486, 488 (Tex. App.—Eastland 1981, writ ref'd n.r.e.). Where a will is unambiguous, extrinsic evidence is not admissible to show the intent of the testator. *Id.* Whether the language of a will is ambiguous is a question of law and is reviewed by this court de novo. *In re Estate of Slaughter*, 305 S.W.3d 804, 808 (Tex. App.—Texarkana 2010, no pet.). In a de novo review, the trial court's decision is accorded no deference. *Id.*

*Will Construction*

A court must construe a will to ascertain the intent of the maker. *Eckels v. Davis*, 111 S.W.3d 687, 694 (Tex. App.—Fort Worth 2003, pet. denied). If a court can give a certain or definite meaning to words used in a will, it is unambiguous. *Slaughter*, 305 S.W.3d at 808. The terms of a will are to be given their plain, ordinary, and generally accepted meanings unless the instrument shows that such terms have been used in a technical or different sense. *Id.* at 809. All parts of the will must be harmonized, if possible. *Id.* Courts must not redraft wills to vary or add provisions to reach a presumed intent. *Id.* If the meaning of the instrument is uncertain or "reasonably susceptible to more than one meaning," the instrument is ambiguous. *Eckels*, 111 S.W.3d at 694.

2

## The Language is Ambiguous

The language at issue is ambiguous in that it is reasonably susceptible to more than one interpretation. This conclusion follows for two reasons. First, a sentence in the will purports to give Judy "[a]ll revenues" that "have been accrued" by the deceased from the property, excluding revenue from the sale of the property. The deceased was describing property that he currently owned; any revenue from the sale, which would have occurred after his death, would never have accrued to him. He, thus, excluded a category of revenue from his bequest to Judy that was already purportedly excluded by the phrase "which have been accrued by JOSEPH DAVID BURCHARD." This is an ambiguity, and it raises a question as to what Joseph was giving, or thought he was giving, to his wife.

Second, the definitions of the word "accrue" and the phrase "have been accrued" are not clear from the context in which they are used. The language could be read to give Judy only the revenue that Joseph received from the land during his life or it could be construed to give Judy all revenue from any use of any estate he owned in the land excluding revenue from the sale. This is dependent entirely on the definition of "accrue" that one uses. "Accrue" can mean to "come into existence as an enforceable claim of right" or it can mean to "accumulate periodically." BLACK'S LAW DICTIONARY 23 (9th ed. 2009). Another common definition is "to come about as a natural growth, increase, or advantage." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 9 (11th ed. 2004). The definition Joseph was using is not apparent.

In addition, Appellees argue that "have been accrued" is the present perfect verb form, which connotes "action completed at a past time or before the immediate present." If one uses the definition that Appellees advance—to come into existence as a legally enforceable claim—it is hard to see how Judy would get very much revenue from the property going forward. Suppose, for example, that, during his life, Joseph had contracted with a company periodically to harvest timber from the land and pay him an amount based on the weight of the timber harvested. If that company had harvested timber the day before Joseph died, using the definition of accrue advanced by Appellees, Judy would have a right to the revenue from the harvest because the legally enforceable right to the revenue had come into existence before Joseph's death. However, if that company had harvested timber the day after Joseph's death, a legally enforceable right to payment would not have come into existence or "have been accrued" to him

3

during his life. It is hard to see how Judy would have a right to that revenue based on the interpretation of "have been accrued" advanced by Appellees.

However, the language in the will additionally states that, whatever income she is to receive, she will receive that income for the rest of her life or until she remarries. Joseph was, thus, anticipating that there would be ongoing income from this property that would "accrue" to his wife, undercutting the idea that Judy was to receive only the income that had become a legally enforceable right to Joseph during his life.

The idea that this language creates a right to revenue from all sources that generated revenue during the life of Joseph does not follow from the interpretation of the text advanced by Appellees. We cannot say, from the language of the text alone, what Joseph meant to give to his wife upon his death. We, therefore, sustain Appellant's first and fifth issues.

*Appellant's Second and Third Issues*

Judy also argues that there is a lack of summary judgment evidence to support certain findings in the judgment. In a traditional motion for summary judgment, a movant must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). When reviewing a summary judgment, this court is to take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

We hold that the trial court erred in holding that Mark, Denise, and Curtis had the right to sell or lease oil and gas and other minerals and receive the proceeds from such a sale or lease because there was no summary judgment evidence as to who owned the minerals. There are statements in the pleadings that an oil and gas lease had been executed on the property after the death of Joseph, but pleadings are not proper summary judgment evidence. *Trinity Universal Ins. Co. v. Patterson*, 570 S.W.2d 475, 478 (Tex. Civ. App.—Tyler 1978, no writ). There is no other evidence in the record as to the nature of the ownership of the mineral interest.

Judy has requested that this court take judicial notice that the oil and gas and other minerals are subject to the Relinquishment Act[2] and are, thus, owned by the State of Texas, with the surface owner acting as the leasing agent for the State. Although judicial notice can be taken

---

[2] TEX. NAT. RES. CODE ANN. §§ 52.171–.190 (West 2011).

4

at any stage of a proceeding,[3] we decline in this instance. The facts that we are asked to take judicial notice of are contained in a letter from someone who purportedly worked at the Texas General Land Office. While it may turn out that the minerals are indeed owned by the State of Texas, that is an issue that is best resolved by the factfinding function of the trial court. We sustain Appellant's second and third issues.

*Appellant's Fourth Issue*

In her fourth issue, Judy complains that the trial court granted more relief than the movants requested in their motion by finding that any oil and gas lease would be a sale of the property. *See Sci. Spectrum v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997). We disagree. The trial court was asked to determine the ownership of the proceeds of an oil and gas lease in the original petition for declaratory judgment. Such a determination would necessarily include the nature of the ownership of the oil and gas interest.[4] We overrule Appellant's fourth issue.

We reverse the summary judgment of the trial court and remand for further proceedings to determine the meaning of the language in question and the nature and ownership of the mineral interest in the property.


ERIC KALENAK
JUSTICE


January 5, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

---

[3]*See* TEX. R. EVID. 201(f).

[4]Appellant also complains under this issue that the summary judgment grants relief to Curtis, who was not a movant for summary judgment. We note that Curtis is the original petitioner for declaratory relief.